IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
Charleston DIVISION

| | |
|---|---|
| DEATRICE COOPER,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGETOWN HOSPITAL SYSTEM d/b/a Tidelands Health Georgetown Memorial and Waccamaw,<br><br>Defendant. | 2:26-cv-4265-JD-MHC<br><br>(JURY TRIAL REQUESTED) |

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Deatrice Cooper, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby complains against the Defendant, Georgetown Hospital System d/b/a Tidelands Health Georgetown Memorial and Waccamaw, (hereinafter referred to as "Defendant") as follows:

**NATURE OF THE ACTION**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq*.), 42. U.S.C. Section 1981, and South Carolina Human Affairs Laws.
2. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.
3. This action is brought pursuant to Federal Law of the United States of America.
4. This action is brought pursuant to the laws of the State of South Carolina.

**PARTIES**

5. The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

6. On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

7. At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

8. At all times, relevant to the allegations in this Complaint, the Defendant operated several facilities in the State of South Carolina.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

10. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.* and South Carolina Human Affairs Commission Laws.

11. The Florence Division is the proper venue for this action pursuant because this is the District and Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

**Procedural Prerequisites**

12. The Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission (EEOC") alleging Race discrimination, Retaliation, and Hostile Work Environment.

13. The Plaintiff's first charge of discrimination was filed on September 11, 2025, and set forth the following:

I. *That I am a current employee of the employer. That I have been employed for 20 years.*
II. *That I was considered an exemplary employee. That I am the only African American Supervisor employed in my department. That I have been denied a promotion to Manager patient access. That I was qualified but was not promoted due to my race. That Caucasian individual received the position*
III. *That I complained to Human Resources in February of 2025 of racial discrimination based on differential treatment. I reported that my co-worker who was Caucasian was being treated better, not being required to perform the same tasks, and not being disciplined for the same or worse actions.*
IV. *That after reporting discrimination, I was informed that it was unfounded. I was also informed that I was not required to perform the actions that I complained about that the co-worker was not required to perform.*
V. *That as an African American I was treated differently than other Directors. I was subjected to heightened scrutiny, manipulation, bullying, undermining my authority, and failures by my employer to prevent discrimination.*
VI. *That after my report of discrimination in February of 2025, I began to suffer a retaliatory hostile work environment and retaliatory discipline.*
VII. *On September 8, 2025, I was informed that I could be demoted or resign. That management informed me it was time for a change in my department, and the Employer had received complaints.*
VIII. *That my employer refused to inform me of the complaints or to justify the demotion.*
IX. *That on 9/11/2025, I refused to accept the demotion or resign my employment as I had not failed to perform my position.*
X. *That I have been discriminated against based on my race in violation of Title VII.*
XI. *That I was subjected to retaliation in violation of Title VII.*
XII. *That the Employer had subjected me to a hostile work environment and a retaliatory hostile work environment in violation of Title VII.*

14. The Plaintiff filed a second charge on November 17, 2025, and set forth the following:

I. *That I am a former employee of the employer. That I was employed for 20 years.*
II. *That I was considered an exemplary employee. That I was the only African American Supervisor employed in my department.*
III. *That I filed internal complaints regarding racial discrimination and differential treatment in my department in February 2025.*

IV. *That I was denied a promotion and filed a charge of discrimination with the EEOC/SCHAC on 9/10/2025 alleging discrimination based on race, retaliation and hostile work environment.*

V. *That as an African American I was treated differently than other Directors. I was subjected to heightened scrutiny, manipulation, bullying, undermining my authority, and failures by my employer to prevent discrimination.*

VI. *That after filing a charge of discrimination in September the terms and conditions of my employment changed further with me being subjected to even more heightened scrutiny and bullying.*

VII. *That on November 14, 2025 I was terminated from my employment for an alleged code violation.*

VIII. *That I have been discriminated against based on my race in violation of Title VII.*

IX. *That I was subjected to retaliation in violation of Title VII.*

X. *That the Employer had subjected me to a hostile work environment and a retaliatory hostile work environment in violation of Title VII.*

15. The Plaintiff filed a third charge of discrimination on November 20, 2026, and set forth the following:

I. *That I am a former employee of the employer. That I was employed for 20 years.*

II. *That I was considered an exemplary employee. That I was the only African American Supervisor employed in my department.*

III. *That I was terminated on November 14, 2025.*

IV. *That I filed a grievance through my attorney.*

V. *That after my attorney filed the grievance the employer informed me that I had abandoned. After receiving this notification I was still within my window so I filed my grievance through my own email. The Employer contended that I had abandoned my grievance and refused to accept the grievance.*

VI. *The denial was in retaliation for my previous charges of discrimination, hiring of an attorney to allege discrimination and all of my complaints regarding the treatment of African Americans.*

VII. *That I was subjected to retaliation in violation of Title VII.*

VIII. *That the Employer had subjected me to a hostile work environment and a retaliatory hostile work environment in violation of Title VII.*

16. That the Plaintiff received a right to sue from the U.S. Equal Employment Opportunity Commission on July 8, 2026, for all 3 charges of discrimination.

17. That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## FACTUAL BACKGROUND

18. That the Plaintiff is an African American female over the age of forty.

19. The Plaintiff was hired by the Defendant on September 5, 2005.

20. The Plaintiff was considered an exemplary employee throughout her employment, performing all requirements of her position pursuant to the requests and practices of the Defendant.

21. During the Plaintiff's employment she was promoted due to her performance. The Plaintiff's last position was as a Pre Services Supervisor in the Revenue Cycle Department. The Plaintiff was supervised by Katie Schumaker, the Manager Patient Access Authorization, a white female. The Defendant showed a blatant favoritism to Caucasian individuals.

22. The Plaintiff was considered an exemplary employee at all times up and until her termination. The Plaintiff performed her position with the upmost professionalism at all times. The Plaintiff was employed with the Defendant for over 20 years.

23. Several managers, employees and supervisors made statements regarding Plaintiff's performance and professionalism.

24. The Plaintiff consistently had good evaluations.

25. In September of 2025, the Plaintiff was informed that she was not allowed to hire any individuals for her department.

26. The Plaintiff witnessed others being able to set up interviews and hire employees.

27. The Plaintiff was not permitted to discipline her employees. The Plaintiff requested to discipline Caucasian employees for tardiness and was informed by her white supervisor that she was not permitted to do so. However, she was instructed to discipline African American employees.

28. On February 13, 2025, the Plaintiff sent an email to Human Resources stating the following:

*I, Deatrice Cooper am notifying you that I am currently being racially discriminated by my white direct manager Crystal Olsen. I have also notify my VP of the Revenue, Derek Dudley of the specific events and examples of how I am treated differently than my white counterpart (Samantha Roddy). I am more than happy to provide details upon your request.*

*Respectfully,*

*Deatrice Cooper*

29. The complaint set forth the following:

*My name is Deatrice Cooper, I have been employed at Tidelands Health known at the time of my employment Georgetown Memorial Hospital. I have been employed at Tidelands Health for 18 years and have witness during my tenure unfair and discriminatory practices. I have fear speaking up due to retaliation. Because the discriminatory practices has become more egregious and obvious I have no choice to only to speak up and out. I have been subjected to microaggression and treated differently due to my race African American. Currently I am being treated differently than my white counterparts. See as the following.1 They are able to assertive and passive about there jobs, but when I do the same I am being label as aggressive or an angry black women. 2. My pay grade is reviewed differently than for my white counterparts. 3.I have been told I need to change they way I talk to my white counterparts. I have been falsely accuse by a white female of stating I am a proud black women. I never stated to her. I stated I am proud of who I am, why should I change who I am. This has been held against me as a black female at Tidelands Health that was called out by the CFO (Elizabeth Beth Ward.)*
*I have witness the white female interim Director Toni Mazanec consistently communicate with white employees did in other departments. After she made false accusation she then started bribing my staff with candy.*
*White employees are paid significantly more than my staff. Patient Navigator gets paid well and do not do have of the work.*

*Pay inequality-blatantly pay inequity among black people Black employee Brittany Brunson, Andrea Rivers, Amy Smith, have diploma and degree.*
*White employee with a GED and a pharmacy certificate was employed and compensated more than my staff that have a diploma and degree.*
*The black employee is more tenure than the white employee that is less tenure.*
*I have been told I need to learn articulate my words by Elizabeth Ward. I have been reported My recent encounter was with a contract interim name Toni Mazanec that reported me to Elizabeth.*
*My counterpart Danille Wilbur who have been employed with Tidelands Health for less tenure than I make more than me. The skill set of my role as a supervisor is more complex than a scheduling supervisor. My job is more in detail with calling the insurance company and providing clinical documentation verbally over the phone. LeAnda Holdridge, upheld me to work Pain Management Authorizations for another department that was staff because she felt that her white counterpart (Julie Barraza) more time to train her staff. Classic sign of microaggression. My blood pressure was abnormally high and I was lying on the floor with thunderclap migraine. I was in Rapid improvement events sponsor by Duke endowment where I was kicked out of the meeting because I express how the process was incorrect and cause more rework than progression. Radiologist technicians were told not to contact me by Radiology director at the time Amanda Daughterly.*
*I was told by Elizabeth Ward on 11/16/2023 in order to climb the ladder I will need to create an authorization manual. That is a prime example of gaslighting.*
*The white lady that instigated a problem was able to keep her job, while the black employee was fired. The white employee who was a contractor was able to bend the rule. The white employee who is racist is allow to act in that manner by the CFO and the organization. Elizabeth Beth Ward and Tidelands have elected to tolerate her racist behavior and microaggression.*
*I have also witness over the years was done wrong , by the organization. Her department was*
*What made me submit pay and equity, being gaslight stating in order to move up the ladder I need to complete a manual. I need to learn how to articulate my words. Registrars supervisor get paid more than me and ask me for assistance. I am subjective to discriminatory practices Patient Navigators get paid more than me and I am well knowledgeable. Beth had a meeting with Terry Picket and Mark Loos Eval smith asking me questions for his department.*
*I am doing the work of white people and not being compensate. Pain management is not apart of my department, however Beth stated if I had staff I would not have to help Pain Management. Whereas the authorizations representatives resign the position. White authorization representatives worked from home and black authorizations that were employed longer at the organization are required to work on site. Jo Sortell and Brittany Jersvig was able to work from home without proof of productivity and I needed to prove productivity in order for my staff to work from home and still to this day we are not able to work from home. After I was falsely accuse for saying I am black and proud. Elizabeth began to target my department productivity and additionally pulling denial reports and trying to site poor performance. Date and time of the claim.*

*Elizabeth Ward stated it didn't sound like me stating I am a proud black women. Elizabeth Ward overstep my recommendation on hiring a candidate that did not have any background to help my department.*

*11/18/24 I was placed out of work for the week due to doctor place me on total voice rest. I texted my Director Crystal Olsen in regards to the ordering provider request stating I will not be back into the office until 11/25/24.My Director Crystal asked for a doctor note, and Tidelands Health policy does not take doctors work excuse. I asked Crystal Olsen in text message if I could work from home. Which would have allowed me to monitor my team and work on accounts that needed attention. I was racially discriminated because my white counterpart Samantha Roddy has worked from home due to an ill cat, no childcare, and child broken arm. Crystal Olsen did not reply to my message in regards to working from home. There has been numerous times that Samantha Roddy(white) has interupt my meetings with Crystal Olsen (white) even after the fact stating give me a minute. Samantha Roddy (white) proceeds into the office. On 01/29/25 I had a 1;1 meeting with Crystal Olsen (white) as a supervisor she told me that 2 white women that interviewed for my department will not be going to Oncology office to work, however me and Danielle Pyatt who are black will continue going to Oncology office located in Myrtle Beach. I feel as if Crystal (white) is targeting me as a black woman. I am not allowed to make informal decisions about my department. Samantha Roddy (white)is not being targeted racially as I am as a black woman. On 01/29/25 I asked Crystal Olsen (white) there is a rumor stating Samantha Roddy (white) who has been a supervisor not even a year over customer service, has order computers for her team to work remote. Crystal Olsen response with a snappy attitude and neck motion stated she did not order computers it was provided to her and her team will go remote before your team. I have been a supervisor for 3 years going on 4 in March and being racially target and attack at a company that I have been employed for 19 years by Crystal Olsen(white) and Derek Dudley(white).*

30. That the Plaintiff had reported Chrystal to Mr. Dudley on 2 previous occasions before the February 13th complaint.

31. On February 27, 2025, the Plaintiff was called to Derek Dudley's office and informed that the Defendant did not find any discrimination.

32. As a result of the complaint, the Plaintiff suffered a retaliatory hostile work environment.

33. On April 7, 2025, the Plaintiff was notified that she was placed on a Performance Improvement Plan. The Plaintiff refused to sign the PIP as the majority of the information

was false. The PIP was for pretextual reasons. That prior to this discipline the Plaintiff had not been disciplined.

34. The Plaintiff was disciplined for issues regarding her supervisor. The Plaintiff was disciplined specifically for not providing information to her team. However, she could not provide that information to her team when her manager failed to provide her the information.

35. On August 29, 2025, the Plaintiff was issued a Verbal Corrective Action/Counseling. The Verbal Corrective Action was issued for pretextual reasons and to perpetrate a retaliatory hostile work environment.

36. On September 8, 2025, the Plaintiff was invited to a meeting in the Administrative Building. The Plaintiff was directed to Derek Dudley's office. The Plaintiff arrived at the meeting, where Derek Dudley and Michael Funderburk were waiting. Dudley started the meeting with the statement you have been employed with Tidelands for over 20 years we are not about to do all the paperwork of writing you up. Dudley further informed her that she had one of two options we are demoting you and your pay will be cut to $26.45 and you can take a severance package. The Plaintiff asked what was the reasoning. Dudley proceeded to inform the Plaintiff that he had received complaints. The Plaintiff asked what complaints. Dudley informed the Plaintiff that he was not going to go back and forth with the Plaintiff. The Plaintiff proceeded to inform Funderburk and Dudley that the discipline was not warranted and that it was because the director of the department cannot help and does not know the process, the manager does not know epic and the supervisor that they hired keeps asking questions of the department. The Plaintiff was informed that she has to 12:00 pm on September 9, 2025 to make a decision.

37. The Defendant never provided any evidence of any complaints made against the Plaintiff based on her performance of her position. The reasons for the demotion and treatment of the Plaintiff were pretextual.

38. On September 9, 2025, Funderburk sent the following email:

*Deatrice,*
*Good afternoon !*
*As follow up to the brief conversation yesterday with Derek and myself, it's been determined that a change is needed in your area. We would love to retain you and your experience as a PSR III. As that change will impact your salary by more than 20%, you become eligible for the Severance Pay per the Policy. The specifics of the two options that are available to you are below. We hope that you will continue on in a new capacity with Tidelands Health, but if you choose not to, the severance information is listed below.*

1. *Movement towards a PSR III role at $26.45/hr. (This will be a decrease from your current rate of $33.73/hr. which is a difference of $7.28 or a 21.6% decrease).*
2. *Acceptance of a Tidelands Health Severance Package, recognizing the almost 20 years of service provided to Tidelands Health which would come out to be: $26,974.00. You will also be eligible to receive your PTO which is approximately 272.2 hours. This would be an approximate additional amount of $9181.31.*

*We respectfully ask that you let us know how you want to proceed based on the options provided above by 5:00 PM on Thursday, September 11th, 2025, to Michael Funderburk, HR Manager with Tidelands Health.*
*Respectfully,*
*Michael*

39. On September 11, 2025, the Plaintiff refused to accept the demotion or resign her employment.

40. On September 11, 2025, the Plaintiff filed a charge of discrimination with the EEOC alleging Race Discrimination, Retaliation, and Hostile Work Environment in Violation of Title VII.

41. The EEOC confirmed the filing of the charge of discrimination by the Plaintiff on September 11, 2025.

42. On September 11, 2025, the Plaintiff was informed by Tidelands that there was third option and that she would be demoted but would maintain her salary for a year.

43. On October 10, 2025, the Plaintiff notified management that an employee had significant concerns surrounding her assignment. The Defendant ignored the concerns.

44. On November 14, 2025, the Plaintiff was terminated from her employment by Derek Dudley. The letter of termination set forth the following:

*Dear Deatrice:*
*Today, you received a written class III corrective counseling for violating the Employee Partner Accountability Policy for other actions of a Class III level determined by leaders not to be in the best interest of Tidelands Health of a gross or deliberate misconduct nature. Tidelands Health policy states that a class III action, for any reason, will result in discharge from employment. As a result, you are discharged from employment with Tidelands Health effective today, 11/14/2025. You have the ability to dispute the written action(s) resulting in this discharge. If you decide to file a grievance, you must submit your grievance in writing within five (5) business days. Your written response must be received by the Human Resources Department no later than November 21, 2025. The email address is banderson@tidelandshealth.org. You are responsible for confirming receipt of your grievance at that email address, should you choose to grieve.*
*You should return any keys, ID badge, and all other property belonging to Tidelands Health immediately. Further, you are asked not to return to any Tidelands Health property unless as a patient or visitor. Your final pay for any worked hours and accrued but unused Paid Time Off (if applicable per the PTO policy) will be paid to you on the first pay day following the date of your discharge. Your benefits (if applicable) will remain in effect through end of the month which your employment ends. Your COBRA qualifying event (if applicable) will be updated with our third-party administrator, Flores, and they will mail your COBRA package after benefits end. You will also receive a letter from our benefits department. If you have any additional benefits questions, reach out to benefitsteam@tidelandshealth.org. I wish you the best in your future endeavors.*

45. On November 14, 2025, Derek Dudley informed the Plaintiff that she would be paid out her PTO time of 270 hours.

46. On November 18, 2025, the Plaintiff attempted to return the Defendant's property as instructed. However, security refused to accept the property and informed her she was required to return it to her department. The Plaintiff could not return the property to her

department as she was informed that she was not allowed to enter that department and would be considered trespassing.

47. On November 18, 2025, the Plaintiff filed her second charge of discrimination.

48. On November 18, 2025, the Plaintiff's attorney filed her grievance for wrongful termination. The Grievance set forth the following:

*banderson@tidelandshealth.org*
*Human Resources Director*
*Tidelands Health*
*Subject: Deatrice Cooper November 14, 2025, Termination Letter/Grievance Request for Wrongful Termination Dear B. Anderson:*
*Please be aware that I have been retained to represent Deatrice Cooper in her wrongful termination and Grievance against the Tidelands Health.*
*I hope this letter finds you well. I am writing on behalf of Ms. Cooper, to formally request a grievance regarding her termination, which we believe was wrongful and in violation of applicable laws under Title VII. The Reasons for the demotion and termination were pretextual and should be reversed with returning Ms. Cooper to her position immediately.*
*The termination appears to have been based on retaliation and discrimination, and we are seeking to address this matter promptly by and through the Tidelands Health's grievance procedures.*
*If you have any questions or need further clarification, please do not hesitate to contact me directly at bthunt@huntlawllc.com or 843-553-8709. I look forward to your response and to resolving this matter in a fair and timely manner.*
*Thank you for your attention to this matter.*

*On November 14, 2025, Ms. Deatrice Cooper was terminated for alleged violations of Employee Partner Accountability Policy.*
*Ms. Cooper was wrongfully terminated in retaliation for his complaints and charges of discrimination regarding violations of Title VII.*
***Retaliation:***

- *In February of 2025 Ms. Cooper complained of Race Discrimination based on differential treatment.*
- *As a result of that complaint, Ms. Cooper suffered a retaliatory hostile work environment.*
- *On September 8, 2025, Ms. Cooper was informed that she was required to make a decision that she would have to accept a demotion or resign.*
- *On September 11, 2025, Ms. Cooper refused to accept the demotion or resign her employment.*
- *On September 11, 2025, Ms. Cooper filed a charge of discrimination with the EEOC alleging Race Discrimination, Retaliation and Hostile Work Environment in Violation of Title VII. Charge number 415-2025-02460*

- *On September 11, 2025, Ms. Cooper was informed by Tidelands that there was third option and that she would be demoted but would maintain her salary for a year.*
- *Ms. Cooper performed all requirements of her position.*
- *On November 14, 2025, Ms. Cooper was informed that she was terminated for violations of Tideland's Health Employee Partner Accountability Policy-Section 8C-Subsection AG: Other Actions of a Class III level determined by leaders not be in the best interest of Tidelands Health of a gross or deliberate misconduct nature.*

*The reasons as set forth in the termination letter are pretextual as Ms. Cooper did not commit the actions as set forth. The Alleged Policy Violation is subjective and offers no evidentiary support.*

*Ms. Cooper hereby requests a full hearing to appeal her termination to present evidence that the reasons for the termination are pretextual.*

*Ms. Cooper further hereby requests that she be immediately reinstated to her supervisory position and have all disciplinary measures removed from her employee file.*

49. The Grievance was rejected because the Plaintiff had an attorney involved. In order to preserve her rights the plaintiff filed a grievance on her own without the attorney.

50. On November 19, 2025, the Plaintiff filed her grievance without her attorney. The Grievance was again rejected.

51. The Plaintiff filed a charge of discrimination for retaliation on November 20, 2026.

52. On November 26, 2025, the Plaintiff received her last paycheck. The Defendant violated its own policy when it deducted an amount for a payment plan that the Plaintiff had previously arranged. The Policy was violated due to the policy stating that the Plaintiff's last paycheck was not to be touched which was confirmed by the supervisor of financial counseling. The Defendant then claimed that the Plaintiff did not have a payment arrangement for her medical bill. The Defendant's explanation for taking her paycheck was in error and a violation of policy and specifically in violation for her claims of discrimination, and retaliation.

53. The Defendant further violated their policy and representations to the Plaintiff when they failed and refused to pay out her 270 hours of PTO worth over $9,000.00. The Defendant refused when the PTO was requested. The Plaintiff recorded the conversation and that recording was provided to the Defendant. The Defendant then decided to pay the Plaintiff the $9,000.00 for her PTO.

54. That the Plaintiff was treated differently than other employees who were Caucasian. That the Plaintiff was considered an exemplary employee up and until she made a complaint regarding differential treatment between African American Employees and Caucasian Employees.

55. That Defendant wrongfully discriminated against the Plaintiff in violation of Title VII and 42 U.S.C. 2000, 42 U.S.C. 1981.

56. That each of the reasons presented by the Defendant was pretextual.

57. Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

58. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

59. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

60. That the Plaintiff was issued certain policies and procedures by the Defendant.

61. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

62. That as a result of the Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

63. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race in violation of Title VII and 42 U.S.C. 1981.

64. That the Defendant, treated the Plaintiff significantly differently based on her race.

65. That the Plaintiff treated Caucasian coworkers more favorably. That no one was subjected to the same discrimiantion that the Plaintiff was subjected to.

66. That the Defendant's actions towards the Plaintiff violated the law.

67. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

68. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race, the Plaintiff:

a. suffered severe emotional distress;

b. suffered future lost wages and future lost benefits;

c. suffered economic damages;

d. Loss of employment;

e. Loss of Future employment;

f. incurred attorney fees for this action;

g. incurred costs of this action; and

h. will incur future attorney fees and costs.

69. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

70. That the Plaintiff's employer discriminated against the Plaintiff based on her race complaints.

71. That the Defendant is the proximate and direct cause of damage to the Plaintiff.

72. Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

73. Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks to recover punitive damages from Defendant for discriminating against Plaintiff with malice or with reckless indifference to Plaintiff's federal protected rights.

74. Plaintiff seek all back pay and fringe benefits to which she is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

75. As Plaintiff is seeking damages under 42 U.S.C. 1981A and 29 U.S.C. Section 626(b) Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to 42 U.S.C. Section 1981(A)(c)(1) and pursuant to 29 U.S.C. Section 626 (c)(2).

76. Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

## FOR A FIRST CAUSE OF ACTION

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND 42 U.S.C. 1981

77. That Paragraphs one (1) through seventy eight (78) are hereby incorporated verbatim.

78. That the Plaintiff was considered an exemplary employee.

79. That the Plaintiff was treated differently based on her race. That other Caucasian employees were treated more favorably and not subjected to the same discipline.

80. That the Defendant allowed the Plaintiff to be discriminated against based on her race in violation of their own policies and procedures.

81. That the Plaintiff reported the discrimination in February of 2025. That the Defendant informed the Plaintiff that the discrimination did not exist and her complaints were unfounded. That the Defendant failed and refused to correct the behavior. That the behavior became worse after the Plaintiff's reports.

82. That the Defendant allowed the Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions.

83. That the Defendants discriminated against the plaintiff was based on her race.

84. That the Defendants took adverse employment action against the Plaintiff by:

    (a) Failing to protect the Plaintiff from a Racially Hostile work environment; and

    (b) Refusing to enforce its own policies concerning discipline of employees engaging in harassing comments.

    (c) Allowing the Plaintiff to be discriminated against, disciplined, and terminated from her employment.

85. That the Defendants subjected the Plaintiff to discrimination in violation of the law.

86. That, as a direct and proximate result of the Defendants' intentional, unlawful, and retaliatory actions, the Plaintiff:

(a) Suffered severe emotional distress.

(b) Suffered lost wages and benefits.

(c) Suffered future lost wages and benefits.

(d) Incurred attorney's fees and costs of this action.

87. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

**FOR A SECOND CAUSE OF ACTION**

**RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT COMPLAINTS**

88. That Paragraphs one (1) through eighty-nine (89) are hereby incorporated verbatim.

89. That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII and 42 U.S.C. 1981.

90. That the Defendant was an employer as defined by Title VII and 42 U.S.C. 1981.

91. That the Plaintiff has filed complaints regarding race discrimination with Human Resources and Management. As a result of those complaints the Plaintiff was disciplined and terminated from her employment.

92. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

93. That the Plaintiff complained of discrimination based on her race, hostile work environment and retaliation.

94. That the Defendant retaliated against the Plaintiff by placing her in the most hostile work environment, disciplining her by threatening her with demotion, and terminating her from employment.

95. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

96. That the Plaintiff was considered an exemplary employee by her supervisors until the Plaintiff started reported discrimination, reported hostile work environment, and reported retaliation in violation of Federal Law, State Law and policies and procedures.

97. As a result of the Plaintiff's complaints regarding discrimination based on her Race and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

98. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

99. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

100. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

101. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and ADEA.

**FOR A THIRD CAUSE OF ACTION**

**HOSTILE WORK ENVIRONMENT**

102. That Paragraphs one (1) through one hundred and three (103) are hereby incorporated verbatim.

103. That the Plaintiff was an employee of the Defendant in accordance with Title VII and 42 U.S.C. 1981.

104. That the Defendant is an employer in accordance with Title VII and 42 U.S.C. 1981.

105. That the Defendant subjected the Plaintiff to a hostile work environment.

106. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

107. The Plaintiff was subjected to discrimination based on her Race.

108. That the Defendant failed and refused to address the situation.

109. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race.

110. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff to.

111. That the Plaintiff has been damaged as a result of the Defendant work environment.

112. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

113. That the Plaintiff is entitled to damages from the Defendant for their violation f title VII and 42 U.S.C. 1981 in the amount of actual damages, compensatory, consequential, punitive damages and attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of racial discrimination;

F. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII and the 42 U.S.C. 1981;

G. Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H. Award all damages available to the Plaintiff pursuant to Federal and State Law;

I. Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in racia discrimination, disparate treatment or retaliation against plaintiff and

J. enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Attorney for the Plaintiff
Federal Bar Number 7760
SC Bar #12341
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709

September 25, 2026